# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**CHRISTOPHER S. COLLINS,**

        **Plaintiff,**

**-vs-**                                        **Case No. 6:07-cv-1825-Orl-22DAB**

**ASHTON ORLANDO RESIDENTIAL,**
**LLC and ASHTON WOODS USA, LLC,**

        **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 38)**
>
> **FILED:** **September 22, 2008**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part and **DENIED** in part.

On November 19, 2007, Plaintiff Christopher S. Collins filed his Complaint against his former employer, Defendant Ashton Orlando Residential, LLC ("Ashton"), to recover unpaid overtime wages accrued over two years, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Doc. No. 1. Plaintiff filed an Amended Complaint on March 3, 2008. Doc. No. 25. Ashton now moves the Court for summary judgment, arguing that Plaintiff was a construction superintendent, an exempt, salaried employee who was not entitled to overtime compensation under the FLSA.

## *I. BACKGROUND FACTS[1]*

Ashton is a residential home builder who builds "uniquely designed homes" valued at between $250,000 and $500,000. Ashton employs superintendents for its residential home communities, and the superintendents are responsible for "overseeing, facilitating, and ensuring the quality of the construction of the homes in a particular community." Plaintiff was employed as a superintendent[2] by Ashton from October 2005 until he was terminated in October 1, 2007. Doc. No. 41 (Collins Dep.) Ex. 3. Plaintiff's starting salary was $40,000.00, with a bonus potential of $850.00 per completed home; he also received car and cell phone allowances. Doc. No. 41 at 19-20, 74.

It is undisputed that, as part of his responsibilities in creating the "homeowner experience," Plaintiff scheduled numerous meetings with the home buyers during the home building process, Plaintiff walked the house with the homeowners, talked with them about things that bothered them, and correct the problems. Doc. No. 41 at 23-24. Plaintiff also examined the quality of the subcontractors' work, and he would notify them of any issues; it was very difficult keeping all of the different subcontractors on schedule. Doc. No. 41 at 37-39. Plaintiff would back-charge subcontractors for problems that needed to be fixed; and would deal with subcontractors who argued about the back-charges everyday. Doc. No. 41 at 33. Upon the completion of a subcontractor's work, Plaintiff inspected the work and, if finding it satisfactory, notified the home office via his Palm Pilot that the subcontractor could be paid. Doc. No. 41 at 33. Plaintiff was also responsible for coordinating the inspections of homes with the county building authorities; each home required

---

[1] The Background Facts are either undisputed or read in the light most favorable to Plaintiff, as they must be on summary judgment. *See Davis v. Williams,* 451 F.3d 759, 763 (11th Cir. 2006) ("Courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party . . . [e]ven though the facts accepted at the summary judgment stage of the proceedings may not be the actual facts of the case.").

[2] Plaintiff's job duties as an assistant superintendent were the same as that of a superintendent, except that he was assigned a superintendent to provide oversight and answer questions. Doc. No. 41 at 25, 28, 29. On May 15, 2006, Ashton promoted Plaintiff to the position of superintendent and increased his base salary to $44,000.00. Doc. No. 41 at 27.

approximately five to six county inspections before the closing. Doc. No. 41 at 36. Plaintiff walked the homes with them and addressed their concerns. Doc. No. 41 at 36. The parties dispute the extent to which Plaintiff performed other responsibilities.

It is undisputed that throughout Plaintiff's employment, Ashton did not pay Plaintiff at the overtime rate for hours worked in excess of forty hours a week, believing Plaintiff to be an exempt employee. Plaintiff estimates that he is owed overtime for 32 hours per week for the time he was employed by Ashton. Doc. Nos. 7, 25.

## *II. MOTION FOR SUMMARY JUDGMENT*

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than

conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

"Courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party . . . [e]ven though the facts accepted at the summary judgment stage of the proceedings may not be the actual facts of the case." *Davis v. Williams,* 451 F.3d 759, 763 (11th Cir. 2006) (internal citations and quotations omitted). The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Herzog v. Castle Rock Entertainment,* 193 F.3d 1241, 1246 (11th Cir. 1999).

### *Standards for FLSA Exemptions*

In this case, Ashton argues that the FLSA's administrative exemption applies to Plaintiff's employment, precluding his entitlement to overtime. *See* 29 U.S.C. § 213(a)(1). The FLSA mandates that employees, in general, receive one and one-half times their regular rate of pay for all hours worked in excess of forty per week. *Armitage v. Dolphin Plumbing & Mechanical, LLC,* (quoting 510 F.Supp.2d 763, 768-69 (M.D. Fla. 2007) (citing 29 U.S.C. § 207(a)(1). Federal law exempts from the mandate "any employee employed in a bona fide executive, administrative, or professional capacity" who receives payment on a salary basis. *Id*. at 769 (citing 29 U.S.C. § 213(a)(1)). The exemption is construed narrowly by the courts, and the employer has the burden of showing that it is entitled to the exemption. *Id.*; *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001). Ashton concedes that it shoulders the burden of proof that Plaintiff, by virtue of his superintendent position, was exempt from the FLSA overtime requirements.

The parties are agreed that the exemption at issue in this case is the administrative exemption. The Fair Labor Standards Act does not specifically define the administrative exemption; instead, the Secretary of Labor has "broad authority" to define and limit the scope of exemptions by regulation. *Auer v. Robbins*, 519 U.S. 452, 456 (1997); 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has set forth regulations defining the various exemptions under the FLSA. 29 U.S.C. § 213(a)(1). Under DOL regulations relating to the administrative exemption, an exempt administrative employee is one: (1) who is compensated at a rate of not less than $455 per week; (2) "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3)[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

Ashton argues that it is entitled to summary judgment on Plaintiff's overtime claims because as a superintendent for Ashton, Plaintiff was responsible for the oversight, quality control, and management of the home construction process and was an exempt, salaried employee who was not entitled to overtime under the FLSA. Plaintiff contends that summary judgment cannot be granted because Ashton cannot establish the second element of the exemption test. *See Talbott v. Lakeview Center, Inc.*, 2008 WL 4525012, *3 (N.D. Fla. 2008) (defendant must meet all three elements of this test to establish the exemption while Plaintiff may prevail by showing that any one element cannot be established as a matter of law). Plaintiff argues that Ashton cannot establish that Plaintiff's primary duty involved "office or non-manual work" as required by the regulation.

For an employee to meet the primary duty prong, his "primary duty must be the performance of exempt work." 29 C.F.R. § 541.700(a). Primary duty is defined as "the principal, main, major or most important duty that the employee performs." *Id.* An employee's primary duty is determined on

a case-by-case basis by considering "the character of the employee's job as a whole." *Id.* In reaching its decision the trier of fact considers, but is not limited to, the following factors: [1] the relative importance of the exempt duties as compared with other types of duties; [2] the amount of time spent performing exempt work; [3] the employee's relative freedom from direct supervision; and [4] the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. *Id.*

Ashton argues that for the position of superintendent, the major functional responsibilities for the position included: overseeing the construction process as assigned; subcontractor management; cost control on assigned sites; communication with customers; communication with on-site sales agents and construction organization; and regulatory agency on-site compliance; ensuring that the assigned work site complied with Ashton's safety program and other regulatory requirements; ensuring high satisfaction in customer service; communicating construction, customer service, or safety issues to area managers with suggestions for resolution; and ensuring that the assigned community is in order. Ashton also argues that it instructed and expected its superintendents to inspect the quality of the work performed by the subcontractors but not to perform the work themselves, and that the (admitted) manual tasks Plaintiff performed do not change the characterization of the exemption because they "either were in the nature of finishing details to ensure a satisfied customer during a walk-through or at closing, or were on-the-spot decisions to correct an issue identified by a county inspector to get a satisfactory report." Doc. No. 41 at 24, 37, 40, 69-72, 74.

Plaintiff contends that even though "Ashton discouraged the superintendents from correcting construction problems and from doing manual labor," the reality was Plaintiff and other superintendents were instructed to "do what they had to do to get the work done." Doc. No. 41 at 53.

As Plaintiff testified, this included hooking up electrical meters, as he was instructed to do by his manager. Doc. No. 41 at 68-70. Plaintiff testified that he spent "six hours out of the day" performing such manual tasks as hooking up electrical meters, patching holes in drywall, and sweeping out garages and homes. Doc. No. 41 at 69-70. Plaintiff "assisted" the subcontractors by helping them "throw a plug or a switch in or hang a light or…hook up a meter." Doc. No. 41 at 71.

Ashton puts much emphasis on Plaintiff's testimony which it characterizes as "he could not perform manual tasks on a regular basis because he was too busy overseeing the many houses assigned to him" Doc. No. 38 at 8. However, Plaintiff actually testified that he did not have time to fix things himself because in the beginning he had a lot of houses to check on, but then it "calmed down", which made his job "more manageable." Doc. No. 41 at 37-38. Ashton has offered no specific evidence – as opposed to general job descriptions – to contradict Plaintiff's testimony that he *actually* spent "six hours out of the day" performing manual tasks.

Moreover, the cases cited by Ashton in support are inapposite to the circumstances of Plaintiff's case. In *Armitage v. Dolphin Plumbing & Mechanical, LLC*, 510 F. Supp.2d 763, 770 (M.D. Fla. 2007), in which Judge Fawsett applied a different exemption, the executive exemption, she determined that a project manager performed on balance more management functions than not, had fired at least one employee, and regularly supervised at least two other employees. In *Renfro v. Indiana Michigan Power Co.*, 370 F.3d 512, 516-17 (6th Cir. 2004[3]), in which the appellate court affirmed a determination that power company planners fell within the administrative exemption, where they conceded "much of their work [was performed] at a desk" and the work they claimed was "manual work" was actually "field walk-downs" used to assess repair projects; the court found the walk-downs did not automatically remove them from exempt status because the manual work was

---

[3]This case was decided under the pre-2004 regulations, but the general discussion of office and non-manual work remains relevant.

"directly and closely related to the work requiring the exercise of discretion and independent judgment." *Id.* (quoting 29 C.F.R. § 541.203(b)). In that case, the Sixth Circuit particularly noted the precise issue that is present in Plaintiff's case: "If, however, the [employees] perform 'so much manual work (other than office work) that [they] cannot be said to be basically white-collar employees,' then they are not exempt administrative employees." *Id.* (quoting 29 C.F.R. § 541.203(b)).

The facts of *Roe-Midgett v. CC Services, Inc*., 512 F.3d 865, 875 (7th Cir. 2008)), cited by Ashton, are also distinguishable. In *Roe-Midgett* , the Seventh Circuit held that insurance claims adjusters fell within the administrative exemption where they regularly investigated claims, checked for fraud, spent much of their time in field without direct supervision, estimated losses, determined whether parts should be repaired or replaced, negotiated with mechanics and body shops, and settled claims up to a $12,000 limit, all duties which reflected discretion and independent judgment. The DOL had previously issued an opinion letter that in-house "claims adjusters" were exempt, and the 2004 regulations made it clear that "insurance claims adjusters generally meet the duties requirements for the administrative exemption." *Id.* at 872 (citing DOL letter and 29 C.F.R. § 541.203(a)).

Ashton's other cases, *Cowart v. Ingalls Shipbuilding, Inc*., 213 F.3d 261 (5th Cir. 2000), *Haywood v. North American Van Lines, Inc*., 121 F.3d 1066 (7th Cir. 1997), concerned senior production planners for ship construction projects and a customer service coordinator for shipping company, positions which the courts found fell within the administrative exemption under the "short test" in the pre-2004 regulations. Both cases are easily distinguished from Plaintiff's facts because the tasks were "primarily intellectual in nature and did not involve manual or mechanical work." *See Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261 (5th Cir. 2000); *Haywood v. North American Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir. 1997) ("There is no dispute between the parties that

[plaintiff's] work qualifies as office or nonmanual work for purposes of § 541.214 of the regulations."); *see also Savage v. Unite Here*, 2008 WL 1790402 (S.D. N.Y. 2008) (union organizer position involved fieldwork; however, this was not "manual" labor).

The last reference supplied by Ashton, DOL opinion letter FLSA2006-23, is also of no persuasive import because the administratively-exempt positions in question are so distinct from Plaintiffs – a land acquisition agent, relocation agent, and property management agent for a firm that assists government agencies in the acquisition of property for public works projects such as airports, highways and rapid transit systems. Doc. No. 38-5 at 2. "Many of the employees in question hold real estate licenses and/or possess a baccalaureate degree in real estate or law-related studies." Doc. No. 38-5 at 2. Even the position that sounds superficially most analogous to Plaintiff's, "property management agent," requires that they work with environmental consultants to address environmental issues such as the presence of asbestos and ensure compliance with environmental protection laws; they develop an Operations and Maintenance Plan to ensure that the consultants and contractors follow proper procedures, direct demolition of the property, and prepare detailed specifications prior to bidding. Doc. No. 38-5 at 2-3. Not one decision or opinion letter cited by Ashton discussed the balance of office/non-manual and manual labor is deciding whether an employee fell under the administrative exemption.

According to the regulations, the administrative exemption that Ashton asserts is not intended to apply to those "who perform work involving repetitive operations with their hands, physical skill and energy." 29 C.F.R. § 541.3(a). Examples of employees who are not exempt based on the manual nature of their labor include "non-management employees in maintenance, *construction* and similar occupations such as carpenters, *electricians*, mechanics, plumbers, iron workers, craftsmen, operating engineers, longshoremen, *construction workers* and laborers." *Id.* (emphasis added).

Based on the evidence presented by Ashton, there is a genuine issue of material fact as to the amount and extent of the manual electrician/construction tasks performed by Plaintiff; thus, Ashton has failed to establish as a matter that Plaintiff's qualified under the administrative exemption. Accordingly, it is respectfully **RECOMMENDED** that the Motion for Summary Judgment be **DENIED** in part on the issue of the administrative exemption.

**Willfulness**

Ashton argues that it is not liable for liquidated damages for a willful violation of the FLSA because its outside counsel reviewed its policies and positions, including that of superintendent and as a result, Ashton classified the position of Superintendent as exempt. Doc. No. 38. Plaintiff concedes that Ashton is entitled to summary judgment on the issue of liquidated damages. Doc. No. 40 at 6. Accordingly, it is respectfully **RECOMMENDED** that the Motion for Summary Judgment be **GRANTED** in part on the issue of willfulness.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on December 24, 2008.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy